UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| CARLTON LAWSON, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) Case No. 6:14-cv-01459-HGD |
| | ) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant | ) |

## **MEMORANDUM OPINION**

This matter is before the undersigned United States Magistrate Judge based upon the consent of the parties pursuant to 28 U.S.C. § 636(c) and LR 73.2.  Plaintiff, Carlton Lawson, filed an application for a period of disability and disability insurance benefits on December 13, 2010.  His claim was administratively denied on February 28, 2011. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and A HEARING was held on February 29, 2012.  Plaintiff, represented by counsel, was present and testified. On April 19, 2012, ALJ Ricky V. South issued an unfavorable decision declaring that the claimant was not entitled to disability benefits.  (Tr. 24-33).  Plaintiff requested review by the Appeals Council.  On August 16, 2013, the Appeals Council

denied plaintiff's request for review. (Tr. 25). This case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I.  ALJ Decision

Disability under the Social Security Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R.

§ 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

Following this protocol, the ALJ found that plaintiff meets the insured status requirements of the Social Security Act through March 31, 2011. He found that plaintiff had not been engaged in substantial gainful employment since January 1, 2011, and that he had the severe impairment of degenerative disc disease of the cervical spine. (Tr. 26).

The ALJ next found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. According to the ALJ, plaintiff has the residual functional capacity to perform light work, lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently. He can occasionally climb ladders, ropes

and scaffolds, but should avoid exposure to hazardous conditions such as work at unprotected heights and work around dangerous machinery. (Tr. 27).

Based on plaintiff's RFC, the ALJ found that plaintiff is not able to perform past relevant work. (Tr. 31). Based on the testimony of a vocational expert (VE), the ALJ concluded that, considering plaintiff's age, education, work experience and RFC, he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. These jobs include representative occupations such as assembler, laundry sorter, and packager. Consequently, the ALJ concluded that plaintiff is not disabled under the Social Security Act. (Tr. 32).

In his decision, the ALJ notes that plaintiff testified at the hearing that he is 5 feet 10 ½ inches tall and weighs 210 pounds. He has a high school degree but was in special education classes. He had no vocational training. Plaintiff testified that he can make change and read, but that he does not read well. He does not currently have a driver's license because he has not had money to pay for traffic tickets. He dresses himself but cannot tie his shoes. He also helps around the house and goes to the grocery store with his wife, just to get out. He states that he last worked in 2009, but quit due to an overdose. According to plaintiff, he cannot work because his body is not able and then he gets depressed. He reports that he was electrocuted at work on one occasion and that he has hepatitis C, hypertension and nerve damage. (Tr. 28).

The ALJ noted that plaintiff reported significant limitations in his activities when he completed the Function Report-Adult. However, the ALJ concluded that the medical evidence did not support limitations consistent with his allegations. (*Id.*).

Medical records reflect that plaintiff was admitted to Baptist Medical Center-Princeton emergency room on September 22, 2007, after an electrocution injury that occurred earlier in the day. His boot on his left foot touched a wire and he had a near syncopal episode.[1] Although he did not have a complete loss of consciousness, he reported left side weakness, numbness and tingling, but an MRI was negative. Although improvement was noted, he continued to report some mild paresthesias[2] and physical therapy was arranged. He was discharged on September 24, 2007.

Medical records also reflect that he was seen at the Center for Neurological Care from October 2008 through January 2010. He reported headaches and neck, leg and back pain. X-rays in October 2008 showed decreased disc space at C5-6 and C6-7, but there were only mild spondylotic changes at C5-6. The ALJ noted that plaintiff reported no double vision, fainting, blackouts, paralysis, numbness, tremors or weakness. He reported only moderate pain at 5/10 in January 2010. (*See* Ex. C4F).

---

[1] A syncopal episode denotes a loss of consciousness.

[2] Parasthesia means numbness or tingling.

According to the ALJ, "continuing treatment has not been evidenced." (Tr. 29). He further stated that "[d]espite his allegations of limitations, there is little evidence the claimant sought continuing treatment, with records showing only occasional visits to the emergency room." (*Id.*).[3] He noted that in June 2009, plaintiff was treated at the emergency room for a skin rash and in October 2010 for a persistent cough and right side pain. (*See* Ex. C13F). He also had an emergency room visit on June 7, 2011, for heat exhaustion and cramps. He was treated with IV hydration. (*See* Ex. C11F). Plaintiff has a hospital admission on June 14, 2011, reporting that he had painful cramps in his back and lower extremities, ringing in his ears, and feelings of generalized weakness. Plaintiff stated that his work was very demanding and that he had to work outdoors in 100+ degree heat. In spite of drinking water and Gatorade, his symptoms had returned.

On his June 14, 2011, hospital visit, plaintiff reported that the only medication he was taking was over-the-counter potassium. On examaniation, his heart rate and rhythm and lungs were normal. His extremities showed no cyanosis, clubbing or edema, and peripheral pulses were 2+ bilaterally. The ALJ noted that the records show plaintiff was very prone to dehydration and renal insufficiency, and it was noted that he might have an

---

[3] Medical records reflect that plaintiff saw Dr. Lorn Miller, M.D. at the Center for Neurological Care on a monthly basis from January 2009 through January 2010. The records do not reflect that he received any treatment other than the continued renewal of the pain medication Oxycontin as well as other medications, including Xanax, Neurontin, Celebrex Zanaflex and Lexapro. (*See, e.g.,* Ex. C4F at Tr. 305).

underlying kidney condition. He was advised to stay off work until he saw a nephrologist and followed up with his primary-care physician. However, the ALJ noted that there was no evidence of additional treatment from any source. (*See* Ex. C12F).

The ALJ further noted that the state agency requested a physical examination and this was performed by Dr. Robert MacGregor on January 29, 2011. Plaintiff advised Dr. MacGregor that he had suffered from severe back pain since 1999, stating that an MRI had shown degenerative disc disease at L4-5. He stated that he had not been able to follow up due to lack of insurance and the inability to afford medications. He also reported residual pain from his electrocution in 2007. According to the ALJ, plaintiff reported that he was able to perform his daily activities without difficulty.[4] The ALJ further states that the report reflected that plaintiff walked without assistance and was able to get on and off the exam table, but had difficulty getting up from the recumbent position.[5] His blood pressure was 138/90 and his heart rate and rhythm were regular. He had a painful gait and was unable to tandem walk. Romberg testing was positive, and plaintiff was unable to walk toe to heel. Tenderness was noted to palpation of his lumbar

---

[4] The medical report states, "The claimant is able to bathe, dress, use the toilet and eat without difficulty. He does not drive or do any household chores. He spends most of the day 'doing very little.'" (Ex. C5F at Tr. 410).

[5] The report states, "The claimant walks into the examination room without assistance. He appears uncomfortable while sitting throughout the exam. He is able to get on and off the examination table, but has great difficulty getting up from the recumbent position. He is able to remove his shoes, but requires help getting his socks back on." (Ex. C5F at Tr. 411).

spine and there was some limitation in range of motion. However, strength was 5/5 in all extremities. Dr. MacGregor's diagnosis found that plaintiff suffered from low back pain of unclear etiology and hypertension. (Tr. 413). The ALJ states that, despite this diagnosis, Dr. MacGregor did not opine that plaintiff experienced limitations that significantly affected his level of functioning. (Tr. 29).

A consultative psychological examination was also performed by Dr. Jerry Gragg, Psy.D., on February 19, 2011. Based on the evaluation, Dr. Gragg found that plaintiff did not currently have nor had he ever suffered from formal thought disorder, and that there was no evidence of a personality disorder. (Tr. 30). Dr. Gragg further noted that, while his electrical accident was noted to be the type of incident that could cause some cognitive dysfunction, plaintiff's description seemed to indicate there was no brain involvement. He also noted that plaintiff had a history of extensive drug abuse which could have resulted in some cognitive disorder.[6] His diagnoses included depressive disorder, an anxiety disorder, rule out cognitive disorder, and an antisocial personality disorder. However, Dr. Gragg opined that plaintiff would have adequate intellectual functioning to be able to understand, remember and carry out simple instructions in jobs

---

[6] Among other things, plaintiff admitted that he had been addicted to Oxycontin and that his last use/abuse of the substance was approximately one year before. (Ex. C6F at Tr. 416). This would coincide with plaintiff's last visit to the Center for Neurological Care where he had been receiving prescriptions for Oxycontin and numerous other drugs.

of a repetitive nature. (Tr. 30; Ex. C6F). The ALJ gave considerable weight to this opinion. (Tr. 30).

The ALJ gave little weight to a psychological examination of Alan Blotcky, Ph.D., wherein he opined that plaintiff would have serious symptoms related to his impairments of a depressive disorder, mild mental retardation and methamphetamine abuse in remission. (Tr. 30; Ex. C10F). The ALJ found that Dr. Blotcky's opinion was inconsistent with the treatment plaintiff had received. Despite the intellectual limitations reported by Dr. Blotcky, which were also evidenced in school records from 1984, plaintiff showed the ability to work in numerous jobs, including skilled and semi-skilled, prior to his injury when he was electrocuted. Furthermore, he has worked since that incident, with evidence showing that he worked as a safety inspector at a welding company from March 2008 until April 2009, and was working as a farm laborer in June 2011. (Tr. 30).

The ALJ also again noted that Dr. Gragg reported that the electrocution accident did not involve plaintiff's brain and that he could function at jobs that required that he be able to understand, remember, and carry out at least simple instructions, but would appear best suited for jobs that were repetitive in nature and not too challenging, cognitively speaking. (Tr. 30; Ex. C6F).

The state agency single decision-maker opined that plaintiff retained the RFC to perform a medium level of exertional activity. (Tr. 84). However, this opinion was not

given any weight as it was not from a medical source. (Tr. 30). Furthermore, the ALJ found that plaintiff's history of back pain would result in more significant limitations and limit him to a light level of exertion. The ALJ accepted the findings reported by Dr. MacGregor but noted that he did not opine that plaintiff has limitations that would prevent him from performing work activity. Likewise, the ALJ noted that none of his treating sources indicated plaintiff had limitations that would prevent all work activity. (Tr. 30-31).

With regard to plaintiff's alleged inability to work due to hypertension and hepatitis C, the ALJ found there was little evidence of treatment for these impairments and no evidence they resulted in significant limitations. In addition, the ALJ found that plaintiff's work as a farm laborer in 2011 is inconsistent with his allegation that he cannot work and significantly limits his credibility. (Tr. 31).

Although records support plaintiff's claim of electrocution, with residual nerve damage, the ALJ noted that he is not currently seeking treatment for this condition and records show only occasional treatment for any of his impairments. In addition, he found that the medical evidence and reported daily activities do not support the severity of pain and limitations alleged by plaintiff. (Tr. 31). The ALJ also noted that, despite plaintiff's reported psychological problems and a history of limited intellectual functioning, plaintiff has performed semi-skilled and skilled jobs in the past and reported that he performed the job of safety inspector since his electrocution, which is inconsistent with

significant intellectual limitations. As a result, the ALJ found that plaintiff's psychological impairments have no more than minimal impact on his ability to perform basic work-related functions, and his impairment is non-severe. (*Id.*).

Using the RFC which the ALJ found applicable to plaintiff, a VE testified that plaintiff could work as an assembler, laundry sorter and packager. Hence, the ALJ found plaintiff to be "not disabled" under the Social Security Act. (Tr. 32).

## II. Plaintiff's Argument for Reversal

Plaintiff argues that the VE's testimony does not provide substantial evidence to support the ALJ's finding that plaintiff could perform other work because the ALJ did not include a sit/stand option and other limitations in his hypothetical question to the VE. (Doc. 15, Plaintiff's Brief, at 11). Plaintiff also argues that the ALJ did not properly include mental limitations in the hypothetical question and should have found plaintiff's mental impairments to be severe. (*Id.* at 12). In addition, he states that the ALJ erred in not considering the plaintiff's severe mental impairment and his severe physical impairment of degenerative cervical spine in combination with each other. (*Id.*).

## III. Standard of Review

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131

(11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## IV. Discussion

Plaintiff first asserts that the ALJ's light work hypothetical did not include all of his impairments, including an alleged need to have a sit/stand option, elevate his legs and take five unscheduled daily work breaks.  However, the ALJ determined, based on the evidence, that plaintiff did not require these limitations.  For example, an MRI taken in

September 2007, following plaintiff's electrocution, showed negative results even though he continued to complain about left side weakness, numbness and tingling. (Tr. 225-26). X-rays taken in November 2008 showed decreased disc space at C6 and C7, but only mild spondylotic changes at C5-6. (Tr. 306).[7] He reported only moderate pain of 5/10 in January 2010.

At the consultative examination performed in January 2011 by Dr. MacGregor, plaintiff reported that he could perform some of his daily activities without difficulty. He walked without assistance and was able to get on and off the examining table, though with great difficulty. (Tr. 410-11). Plaintiff did exhibit a painful gait and could not tandem walk; the Romberg test showed positive results; and plaintiff could not heel-to-toe walk. (Tr. 412). He also exhibited some limitation in range of motion in the spine and tenderness to palpation. (*Id.*). However, he did exhibit strength of 5/5 in both arms and legs. (Tr. 413).

In addition, the ALJ noted that plaintiff has worked as a safety inspector and a farm laborer since his electrocution, which tends to counter his claim that he cannot work or needs a sit/stand option. The ALJ further noted that plaintiff has had very little treatment lately for any of his impairments. Although he was seen at the Center for Neurological Care every month in 2009 and once in 2010, there is no evidence that he actually

---

[7] Plaintiff claims a Dr. Rollins told him he had degenerative discs in L4 and L5. (Tr. 56). However, there are no medical records in evidence to back up this claim.

received any kind of therapy or treatment other than to refill prescriptions for pain killers, muscle relaxers and other types of medication. The regulations permit the ALJ to consider this evidence in determining plaintiff's credible limitations. *See* 20 C.F.R. §§ 404.1545(e) and 416.945(e) (" In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence, including the information described in § 404.1529(c).")

The ALJ did not totally discount plaintiff's testimony concerning his pain and other limitations. He accounted for it by assigning plaintiff an RFC in the light range of exertion and explained his reasons for doing so. Therefore, the ALJ did not err.

Plaintiff also argues that the ALJ did not properly include mental limitations in his hypothetical question. In particular, plaintiff asserts that the ALJ took his testimony about his mental condition and Dr. Blotcky's report stating that plaintiff would have serious symptoms related to his impairments far too lightly. (Doc. 15, Plaintiff's Brief, at 12). He points out that plaintiff, while a high school graduate, was in special education classes; he can read some but had to take an oral driver's license examination; and he tried to kill himself with an overdose of drugs. In addition, he also entered a "best interest" plea to criminal charges where he tried to steal dynamite. (Tr. 65). He alleges that these are not just mild limitations; they have severely affected him.

In evaluating plaintiff's mental impairments, the ALJ noted that Dr. Gragg, the state agency consultative examiner, found that plaintiff never suffered from a formal

thought disorder and showed no signs of personality disorder. (Tr. 417). Though plaintiff did exhibit some depressive mood, anxiety, difficulty focusing, and some memory impairment, the ALJ noted that Dr. Gragg found no clear-cut reason to explain his symptoms. (*Id.*). Dr. Gragg noted that, though the electrocution could potentially cause cognitive dysfunction, plaintiff's description seemed to implicate no brain involvement. (*Id.*). Likewise, Dr. Gragg noted that plaintiff had a history of drug abuse which could have caused some cognitive impairment. (*Id.*). Nonetheless, he concluded that plaintiff retained adequate intellectual functioning to understand, remember and carry out simple instructions in jobs of a repetitive nature. (Tr. 418).

In addition, Dr. Robert Estock, a state agency psychological consultant, found no severe impairments after examining the record. (Tr. 419). This was consistent with the results of Dr. Gragg's examination. Furthermore, the ALJ noted that any mental impairments from which plaintiff may have suffered resulted in no more than minimal impact on his ability to perform after his injury and as a farm laborer as late as June 20110. (Tr. 187, 469). Dr. Gragg opined that plaintiff's accident did not involve his brain and that he could perform simple work, which undermines Dr. Blotcky's testimony.

Based on all of these things, the ALJ determined that plaintiff did not have a mental impairment to include in the hypothetical question to the VE. (Tr. 31, 7-74). Substantial evidence supports these conclusions.

Plaintiff also asserts that the ALJ should have considered his mental limitations in combination with his degenerative disc disease. However, he provides no authority to support this argument. Issues not argued are waived. *See Outlaw v. Barnhart*, 197 Fed.Appx 825, 828 n.3 (11th Cir. 2006); *N.L.R.B. v. McClain of Georgia*, 138 F.3d1418, 1422 (11th Cir, 1998).

## V. Conclusion

Because the court has determined that the hypothetical question contained all of plaintiff's credible limitations, as supported by the record, the ALJ properly relied on the VE's testimony to determine plaintiff could perform other work. (Tr. 73-74). Because the ALJ's decision is supported by substantial evidence, the decision of the Commissioner is due to be affirmed. A separate order will be entered.

DONE this 23rd day of November, 2015.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE